No. 11,146.

COOK v. WOODRUFF ET AL.

MORTGAGE.—*Foreclosure.*—*Evidence.*—*Letters.*—*Payment.*—*Receipt.*—Where real estate was sold and notes and mortgage given for purchase-money, and the property transferred and laid off in lots, and a portion resold and bonds and notes taken upon such sales, it was proper under an answer of payment, on trial of the foreclosure suit, the principal owner of the property being dead, to permit the introduction in evidence of a letter from the father of the deceased, to the plaintiff, enclosing a receipt by the plaintiff's attorney to the deceased for a sum of money in excess of the amount of the mortgage debt, said sum having been paid at the request of the plaintiff, and the letter connecting the payment with the mortgage and being admitted with other evidence in relation to the transactions of the parties.

SAME.—*Examination of Plaintiff as Witness.*—*Letters of Agent of Defendant.*—*Death of Principal Defendant.*—It was also proper, while the plaintiff was under examination by the defendants as a witness on their behalf, to allow the introduction of letters to the plaintiff from one acting as agent of the principal owner before his death, and himself interested in the mortgaged property, in regard to the sale of the lots and the application of the proceeds upon the mortgage debt. The letters were relevant, and the plaintiff, being upon the witness stand, had full opportunity for explanation, and if the letters were immaterial he could not be injured by their introduction. The principal owner being dead, and the defendants, relying chiefly upon the testimony of the plaintiff, aided by such additional evidence as they could find, were entitled to a liberal use of such evidence as was in any way competent and relevant to the issue.

SAME.—*Application of Proceeds of Sales.*—Proof having been introduced that an arrangement had been made with plaintiff, that he was to receive the proceeds of lots sold and to release a lot from the lien of the mortgage for every one thousand dollars received, and a large amount of such proceeds being received in bonds, the defendants were entitled to examine the plaintiff as to his application of money subsequently received upon such bonds. So, also, the plaintiff was subject to an examination in

regard to an indemnifying bond executed by parties in interest to secure the payment of the bonds received on the sale of the lots.

SUPREME COURT.—*Evidence.*—*Exceptions Waived.*—Where the questions put to a witness under examination and excepted to are not the ones discussed on appeal in the Supreme Court, the exceptions are considered as waived.

SAME.—*Instructions.*—*Exceptions to Special.*—Where the instructions given, considered together, are full, complete and without contradiction, and contain a fair exposition of the law as applicable to the case, objections to one or more of them taken separately will not be considered.

SAME.—*Verdict.*—*Evidence.*—When there is evidence clearly tending to support the verdict, it will not be disturbed on the evidence alone.

From the Superior Court of Marion County.

*J. E. McDonald, J. M. Butler* and *A. L. Mason,* for appellant.

*B. Harrison, C. C. Hines, W. H. H. Miller* and *J. B. Elam,* for appellees.

FRANKLIN, C.—Appellant, Cook, commenced a suit in the Marion Superior Court to foreclose a mortgage upon certain real estate executed by appellees William Daggy, Otway Allen and Moses McLain, on the 11th day of September, 1872, to one John F. Reed, to secure the payment of two several promissory notes, each for $45,693.33⅓, with interest at six per cent., payable in one and two years, with Addison Daggy, Joseph Allen, Jr., and William M. Wheatley as sureties thereon. The notes and mortgage had been assigned by said Reed to the plaintiff, on the 27th day of February, 1873. The real estate mortgaged had been sold and conveyed, subject to the mortgage, by the mortgagors, to one James O. Woodruff, who had the same platted and laid off into city lots as an addition to the city of Indianapolis. These lots had been purchased by a number of individuals, and over one hundred of such purchasers are made defendants to this complaint. Appellee E. Delevan Woodruff was one of the principal owners and interested parties in the property. James O. Woodruff, the principal proprietor of the mortgaged property, known as the "Woodruff Place," died be-

fore the trial of the suit, and in a few days after its com-
mencement. As a defence to the foreclosure of the mortgage
the said E. Delevan Woodruff and other defendants pleaded
payment of the debt and satisfaction of the mortgage, while
other defendants pleaded a release of their lots from the mort-
gage, but the principal defence, and the one discussed by
counsel is payment.

There was a trial by jury, and verdict for defendants. Over
a motion for a new trial judgment was rendered for the de-
fendants. Cook appealed the case to the general term, where
the judgment of the special term was affirmed, and he has
appealed to this court.

The error assigned in this court is the affirmance by the
general term of the judgment of the special term.

There were a number of errors assigned in the general
term, but the only one relied upon by appellant and discussed
by counsel is the overruling of the motion for a new trial.
And the only reasons for a new trial urged in this court are
the admission of illegal testimony, error in instructions, and
the insufficiency of the evidence to sustain the verdict.

The first objection insisted upon, to the introduction of
evidence, is in relation to a letter by Harmon Woodruff to
the plaintiff, dated March 11th, 1873, enclosing a receipt from
Avery to James O. Woodruff for $300. Avery was the at-
torney of the plaintiff, and the money appears to have been
paid at the request of the plaintiff. The letter connects the
transaction with the mortgage, and in connection with the
other evidence in relation to the transaction of the parties,
we think there was no error in admitting the letter and re-
ceipt in evidence.

The next objection is to the introduction in evidence of
two letters written by P. C. Woodruff to the plaintiff, dated
respectively, July 25th and July 31st, 1873. P. C. Wood-
ruff appeared to be interested in the " Woodruff Place," and
was transacting business for his brother James O. Woodruff
in relation to the " Woodruff Place." The letter dated July

25th appears to be in answer to one written by the plaintiff, and was in reference to the sale of lots in the " Woodruff Place," and applying the proceeds thereof upon plaintiff's mortgage; the letter of the 31st of July is in further explanation of the same matter. These letters were relevant to the investigation of the plaintiff's mortgage and its payment. The plaintiff was upon the witness stand at the time of their introduction in evidence, and was examined as a witness in relation to them, and had full opportunity to give all necessary explanations. But it is objected, that the letters were immaterial; if so, with plaintiff's full opportunity to explain, we do not see wherein he was injured by their introduction in evidence.

The principal in the " Woodruff Place " transactions was dead, and the defendants, for a defence to the mortgage, had to rely mostly upon the testimony of the plaintiff himself, aided by such additional evidence as they could find. Hence a liberal use of such other evidence as was in any way competent and relevant to the case should be allowed. We think these letters were connected with the transaction of the business in controversy, and were admissible in evidence.

The next objection is to permitting an examination of the plaintiff in relation to whether any money paid by James O. Woodruff, or for him by others, had been applied upon $64,-000 of bonds and notes which the plaintiff had previously received in payment upon the mortgage.

The parties had made an arrangement that as the lots in Woodruff Place were sold the proceeds of the sales should be applied on plaintiff's mortgage, and for every thousand dollars of such proceeds so turned over to the plaintiff, he was to release one of the lots from the mortgage, under which arrangement, prior to July, 1875, he received in payment upon his mortgage the $64,000, in bonds and notes, as the proceeds of sales of the lots, and the testimony objected to was as to whether he did, after so receiving said notes and bonds, apply other moneys afterwards paid to him by said

James O. Woodruff, or others for him, upon said notes and bonds. We think this was a proper examination, and that the testimony was admissible.

Some time after the $64,000 in notes and bonds were received, $60,000 thereof being in bonds, plaintiff took from Harmon Woodruff and Paul C. Woodruff an indemnifying bond for the $60,000 in bonds. And while the plaintiff, as a witness in the case, at the instance of defendants, was being examined by the defendants, he was examined in relation to this indemnifying bond, which examination was objected to by the plaintiff. This bond recites the execution of the original notes and mortgage to Reed, their transfer to the plaintiff, an indemnifying bond against loss on the mortgage executed by Harmon Woodruff and Paul C. Woodruff, together with James O. Woodruff and Daniel Macauley, the $60,000 in bonds received thereon, and guarantees to plaintiff the payment of said bonds.

We think this was a part of the transaction in controversy between the parties, and as such was competent evidence, and there was no error in permitting the plaintiff to be examined as a witness in relation to it.

The next objection is to permitting E. Delevan Woodruff to testify as to a conversation between him and his brother James O., had in the absence of the plaintiff.

E. Delevan Woodruff, Paul C. Woodruff and James O. Woodruff were all sons of said Harmon Woodruff, and the plaintiff was their uncle; these three sons and the father were interested in the " Woodruff Place " property. In July, 1878, E. Delevan Woodruff made a trip to Europe to see the plaintiff in relation to his mortgage upon the " Woodruff Place," and met him in London, where he had a conversation with the plaintiff in relation to the mortgage, in which he told the plaintiff that his brother James said the mortgage was overpaid between four and five thousand dollars. Mr. Cook answered that he did not know about that; that he had not his papers with him; but that he was out of pocket a large

.amount of money; and in explanation he said he had taken from James for the release of lots, money, bonds and mortgages, and other things in lieu of money, which had not panned out as he anticipated, and that he was loser to a large amount; that he had taken these things in lieu of money and released a lot for each thousand dollars so received. Witness then asked him to release the property from his mortgage or ·assign the mortgage so he could enter satisfaction upon the record, which plaintiff declined to do, unless they would make good by payment of all the securities that he had received from James.

James died June 6th, 1879, and his father and Paul C. had been invalids for some time, and incapable of transacting business.

The foregoing is gathered from the examination in chief of E. Delevan Woodruff, as a witness upon the trial of the ·cause; and upon cross-examination by plaintiff's counsel he was asked as to what time he had the conversation with James which he undertook to detail to Mr. Cook; he answered in the spring before he went to Europe of the same year. He further testified that in the conversation with the plaintiff at London, the plaintiff said nothing about any settlement, or what accounts had been credited; that he (witness) knew nothing of any settlement; that Mr. Cook, in the conversation at London, did not admit the mortgage was paid off, nor ·deny it; he avoided the question. He gave Mr. Cook no specific statement showing that the mortgage was paid off; he only stated to him generally that James said it was more than paid off. Witness was then asked by plaintiff's counsel: " When James made that communication to you, did he not tell you anything about the settlement that had taken place before? Answer. No, sir."

This question was repeated as to each one of several alleged .settlements, and answered in the same way. These questions .and answers were in relation to the conversation with James ·which he had referred to in the conversation with Mr. Cook

at London. Upon re-examination he was asked by defendant's counsel the following question:

"Mr. McDonald asked what James said to you when he told you that he had overpaid Mr. Cook as he thought four or five thousand dollars. What did he tell you as to how Mr. Cook had dealt with him about this, if you recollect; if he went into a statement at all, what did he tell you?"

This question was objected and excepted to, but was only answered by the witness, by asking the question whether it was "before he went to Europe?" Then the following question was asked him: "Yes, you were inquired all about that. I will ask you if James told you how it was that the mortgage had been overpaid four or five thousand dollars. What did he say as to that?" To which the witness answered: "He said Mr. Cook had been very hard on him, and had taken everything he had got, and it was blood money, blood money, and he said I have paid him blood money enough to pay half his mortgage."

This question and answer were not objected or excepted to, and the answer to this question is the one objected to by appellant's counsel and discussed in his brief in this court.

There is no exception of record upon which this question can be presented.

The questions which the record shows exceptions to are not the ones discussed in this court, and they are therefore considered as waived. We find no available error in the admission of testimony.

The next reason urged for a new trial is alleged error in the instructions of the court to the jury. The instructions are too lengthy to copy in an opinion; we have examined them carefully, and, taking them all together, we think they are full, complete, and without contradiction, and contain a fair exposition of the law as applicable to the case. In such cases, objections to one or more of them, taken separately, will not be considered available. *Western Union Tel. Co.* v. *Young*, 93 Ind. 118; *Pennsylvania Co.* v. *Rusie*, 95 Ind. 236.

Upon an examination of the evidence, we think there was testimony clearly tending to support the verdict of the jury, and in such cases this court will not disturb the verdict upon the evidence alone.

We find no available error in the record.

The judgment ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment below in general term be and the same is in all things affirmed, with costs.

